## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jesse L. Talbert,                                    Case No. 23-cv-1284 (JRT/TNL)

        Petitioner,

v.                                                   **REPORT & RECOMMENDATION**

Acting Warden Thomas,

        Respondent.

Jesse L. Talbert, Reg. No. 19801-085, FCI Sandstone, 2300 County Road 29, Sandstone, MN 55072 (pro se Petitioner); and

Ana H. Voss and Chad A. Blumenfield, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

## I. INTRODUCTION

This matter comes before the Court on pro se Petitioner Jesse L. Talbert's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody ("Petition"), ECF No. 1, and Motion to Expedite 2241 Petition ("Motion to Expedite"), ECF No. 6. Petitioner alleges that the Bureau of Prisons ("BOP") imposed sanctions against him, including the loss of good conduct time, for violating prison rules. Pet. at 3; *see also* ECF No. 1-1 at 3. He claims that the sanctions imposed violate his constitutional right to due process. Pet. at 3; *see also* ECF No. 1-1 at 3. Petitioner asks the Court to reverse a portion of the sanction he received forfeiting 324 days of non-vested good conduct time. Pet. at 3; *see also* ECF No. 1-1 at 3. He also asks the Court to expedite consideration of his Petition. ECF No. 6.

1

This matter has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **DENIED**, the Motion to Expedite be **DENIED AS MOOT**, and this matter be **DISMISSED WITH PREJUDICE**.

## II. BACKGROUND

Petitioner is currently serving a 46-month sentence at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). Decl. of James McIlrath ¶ 7, ECF No. 9. Petitioner has a projected release date of February 10, 2025, via good conduct time release. *Id.*; *see also* Ex. B to McIlrath Decl. at 1-2, ECF No. 9-2.

On November 18, 2022, while incarcerated at the Federal Correctional Complex in Lompoc, California ("FCC Lompoc"), Petitioner received a copy of Incident Report Number 3699981 for a violation of (1) Code 199, which prohibits possessing a cellular phone in prison, and (2) Code 217, which prohibits giving money to, or receiving money from, any person for any illegal or prohibited purpose. McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl., ECF No. 9-4. According to the incident report, officers found a contraband cellular phone in the outside warehouse at FCC Lompoc. McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1. On November 18, 2022, at 9:00 a.m., an officer reviewed the cellular phone and found a text message stating, "Chime: Jesse Talbert requests $100.00. Tap link to approve or decline." McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1, 5. A review of inmate records identified the name in the text message

as Petitioner, who has a work assignment in the outside warehouse at FCC Lompoc. McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1. According to the BOP, "Chime/Cash App are cellular telephone third party applications that can only be utilized through a cellular telephone or a computer," and "inmates are not authorized to have access to a cellular telephone or computers that would be able to access these applications." McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1. Further, these applications involve requesting and sending money, and inmates are not authorized to give or receive money for any purpose. McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1.

When Petitioner received a copy of the incident report, he was advised of his rights during the disciplinary process. McIlrath Decl. ¶ 10; *see also* Ex. D to McIlrath Decl. at 3. Petitioner declined to make a statement. McIlrath Decl. ¶ 10; *see also* Ex. D to McIlrath Decl. at 2-3. The investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for a hearing. McIlrath Decl. ¶ 10; *see also* Ex. D to McIlrath Decl. at 2-3.

On November 21, 2022, the UDC conducted an initial hearing on the incident report. McIlrath Decl. ¶ 11. During the hearing, Petitioner provided no comment. *Id*. The UDC referred the incident report to the Discipline Hearing Officer ("DHO") for a hearing, advised Petitioner of his rights during the DHO hearing, and gave Petitioner an opportunity to request witnesses and a staff representative. *Id*.; *see also* Ex. E to McIlrath Decl., ECF No. 9-5; Ex. F to McIlrath Decl., ECF No. 9-6. Petitioner did not request a staff representative and declined to call any witnesses. McIlrath Decl. ¶ 11; *see also* Ex. F to McIlrath Decl.

On January 3, 2023, the DHO held a hearing on the incident report.  McIlrath Decl. ¶ 12; *see also* Ex. I to McIlrath Decl., ECF No. 9-9.  At the hearing, Petitioner waived his right to have a staff representative present and his right to present witnesses.  McIlrath Decl. ¶ 14; *see also* Ex. I to McIlrath Decl. at 1-2.  Petitioner admitted to the charges, stating he was "guilty."  McIlrath Decl. ¶ 14; *see also* Ex. I to McIlrath Decl. at 1.  The DHO concluded that Petitioner violated BOP disciplinary Code 199, for possessing a cellular phone in prison, Code 217, for giving money to, or receiving money from, any person for any illegal or prohibited purpose.  McIlrath Decl. ¶ 15; *see also* Ex. I to McIlrath Decl. at 2-4.  The DHO imposed sanctions including the loss of commissary privileges, phone privileges, and visiting privileges, disciplinary segregation, and a monetary fine.  McIlrath Decl. ¶ 15; *see also* Ex. I to McIlrath Decl. at 4.  In addition, the DHO sanctioned Petitioner with the loss of 41 days of good conduct time and 324 days of non-vested good conduct time for violating Code 199, and the loss of 13 days of good conduct time for violating Code 217.  McIlrath Decl. ¶ 15; *see also* Ex. I to McIlrath Decl. at 4.

### III. ANALYSIS

Petitioner argues that taking 324 days of non-vested good conduct time as a result of the incident report violates his due process rights.  Pet. at 3.  He contends that the DHO imposed "a drastic upward departure" and gave him an "aggravated sanction."  ECF No. 1-1 at 3.  Respondent argues that: (1) Petitioner received the procedural guarantees afforded to him under the Fifth Amendment's Due Process Clause; (2) "some evidence" supports the DHO's determination that he violated Codes 199 and 217; and (3) the sanctions he received are authorized by BOP policy.  *See* Resp. at 7-10, ECF No. 8.

4

The loss of "good time credits as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinosa v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). But, due process rights "are limited in the prison disciplinary context." *Louis v. Dep't of Corr. Servs. of Neb.*, 437 F.3d 697, 700 (8th Cir. 2006). In general, when a prison disciplinary hearing may result in the loss of good time credits, prison disciplinary proceedings must conform to the following rules:

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . .

*Espinosa*, 283 F.3d at 951 (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). In addition, "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Id*. at 951-52. The "some evidence" standard is deferential to prison officials, and it "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quotation marks omitted). "If there is any evidence in the record that could support the finding of the disciplinary authority, then the sanctions comport with due process." *Id*. (quotation marks omitted).

Here, Petitioner does not contest that the procedural requirements of the prison disciplinary proceedings were satisfied. And, based on the record before the Court, the Court finds that the procedural requirements of Petitioner's prison disciplinary proceedings

were met.  First, Petitioner received advance written notice of the disciplinary charges on November 18, 2022, when the incident report was provided to him.  *See* McIlrath Decl. ¶ 9; *see also* Ex. D to McIlrath Decl. at 1-3.  Second, Petitioner had the opportunity to call witnesses and present documentary evidence on his behalf at the hearing, but he declined to do so.  *See* McIlrath Decl. ¶ 14; Ex. G to McIlrath Decl. at 1-4.  Third, Petitioner received a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  *See* McIlrath Decl. ¶ 13; Ex. I to McIlrath Decl., ECF No. 9-9. Accordingly, the Court concludes that Petitioner received constitutionally adequate procedural safeguards prior to the imposition of discipline.

The Court also concludes that the "some evidence" standard is satisfied in this case. The DHO report indicates that an officer at FCC Lompoc located a contraband cellular phone in the warehouse.  During a review of that cellular phone, a text message containing a "CASH APP" request was found, stating, "Jesse Talbert requests $100.00. Tap link to approve or decline."  A review of BOP records identified the name in the text message as Petitioner, who worked at the warehouse where the contraband cellular phone was found. This evidence is sufficient to satisfy the highly deferential some-evidence standard. Petitioner also stated he was "guilty," declined to make a statement, and failed to provide any credible evidence to dispute the allegations.  The Court finds that some evidence supports the BOP's determination that Petitioner violated the BOP's regulations prohibiting possession of cell phones and giving or receiving money for any illegal or prohibited purpose.  Because some evidence supports the decision and the BOP provided Petitioner with all the procedural protections he was constitutionally entitled to receive, the

Court concludes that his due process claim should be denied.

Petitioner argues that the sanction of 324 days of non-vested good conduct time is "more than the circumstances warrant." Pet.'s Reply at 6, ECF No. 11. He contends that "[i]t is common knowledge amongst inmates and staff in the BOP" that an inmate "typically loses . . . up to 54 days [of good conduct time] when multiple violations are on an incident report." *Id.* at 1. Petitioner argues that the BOP failed to identify which "aggravating circumstances" warranted the severe sanction of the loss of 324 days of non-vested good conduct time. *Id*.

The BOP has established guidelines for the imposition of discipline on inmates. *See* McIlrath Decl. ¶ 2; Ex. A to McIlrath Decl., ECF No. 9-1 ("Inmate Discipline Program"). According to the Inmate Discipline Program, a violation of Code 199, which prohibits possessing a cellular phone in prison, is of the "greatest severity." *See* Inmate Discipline Program at 45-46. Available sanctions for "greatest severity" level acts include disciplinary segregation (up to 12 months), a monetary fine, loss of privileges (e.g., visiting, telephone, and commissary), loss of good conduct time (ordinarily between 27-41 days), and loss of non-vested good conduct time (up to 100%), among other sanctions. *Id*. at 46. A violation of Code 217, which prohibits giving money to, or receiving money from, any person for any illegal or prohibited purpose, is of "high severity." *Id*. at 47. Available sanctions for "high severity" level acts include disciplinary segregation (up to six months), a monetary fine, loss of privileges (e.g., visiting, telephone, and commissary), loss of good conduct time (ordinarily between 14-27 days), and loss of non-vested good conduct time (up to 50% or up to 60 days, whichever is less), among other sanctions. *Id*. at 50.

Here, the DHO found Petitioner guilty of a Code 199 offense and sanctioned him with (1) 30 days disciplinary segregation, (2) a $500 fine, and the loss of (3) visiting privileges for 18 months, (4) phone privileges for 18 months, (5) commissary privileges for 18 months, (6) 324 days of non-vested good conduct time, and (7) 41 days of good conduct time.  The DHO also found Petitioner guilty of a Code 217 offense and sanctioned him with (1) 30 days disciplinary segregation, (2) a $300 fine, and the loss of (3) visiting privileges for 90 days, (4) phone privileges for 90 days, (5) commissary privileges for 90 days, and (6) 13 days of good conduct time.  These sanctions are all within the scope allowed by the BOP's policy concerning inmate discipline for "greatest severity" and "high severity" level prohibited acts.  Thus, contrary to Petitioner's argument, the sanctions imposed were not "more than the circumstances warrant."

 "The DHO enjoys discretion to impose disciplinary sanctions, and the Court will uphold those sanctions unless the exercise of the DHO's discretion was arbitrary or unreasonable."  *Duprest v. Rios*, No. 19-cv-1782 (ECT/BRT), 2020 WL 3492553, at *4 (D. Minn. June 8, 2020) (citations omitted), *report and recommendation accepted*, 2020 WL 3491631 (D. Minn. June 26, 2020).  While "[t]he Court is not unsympathetic to [Petitioner's] position" and recognizes that the loss of 324 days of non-vested good conduct time "is remarkably severe," *see Maldonado-Maldonado v. Cole*, No. 19-cv-2402 (JRT/KMM), 2019 WL 7756102, at *7 (D. Minn. Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 420008 (D. Minn. Jan. 27, 2020), the Court concludes that the DHO's decision was not arbitrary or unreasonable under the circumstances. Accordingly, the Court finds that the sanctions imposed were not excessive.

8

Because the Court has addressed the merits of the Petition and recommends that the Petition be denied, the Court further recommends that Petitioner's Motion to Expedite the Petition, ECF No. 6, be denied as moot.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody, ECF No. 1, be **DENIED**.

2. Petitioner's Motion to Expedite 2241 Petition, ECF No. 6, be **DENIED AS MOOT**.

3. This matter be **DISMISSED WITH PREJUDICE**.


Date: August ___8___, 2023                    _____*s/ Tony N. Leung*_____
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Talbert v. Thomas*
                                              Case No. 23-cv-1284 (JRT/TNL)


## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).