UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JESSE L. TALBERT,<br><br>      Petitioner,<br><br>v.<br><br>ACTING WARDEN THOMAS,<br><br>      Respondent. | Civil No. 23-1284 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

---

Jesse L. Talbert, Reg. No. 19801-085, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072, *pro se* Petitioner.

Ana H. Voss and Chad A. Blumenfield, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent.

Petitioner Jesse L. Talbert filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging a violation of his constitutional right to due process under the Fifth Amendment. Talbert alleges the Bureau of Prisons ("BOP") imposed punitive sanctions on him that were arbitrary and unreasonable. Magistrate Judge Tony Leung issued a Report and Recommendation ("R&R") recommending that the petition be denied. Talbert objected to the R&R's conclusion that sanctions stripping his non-vested good conduct time did not violate due process. After a de novo review of the record, the Court finds that the sanctions were neither arbitrary nor unreasonable and were adopted

in accordance with BOP regulations. Accordingly, the Court will overrule Talbert's objection, adopt the R&R, and deny Talbert's Petition for a Writ of Habeas Corpus.

## BACKGROUND

Talbert is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota. (Pet. at 2, May 8, 2023, Docket No. 1.) His projected release date with good conduct time is February 10, 2025. (Pet., Ex. 2 at 3, May 8, 2023, Docket No. 1-2).

Talbert was previously incarcerated at the Federal Correctional Institution in Lompoc, California. (Decl. of James McIlrath ("McIlrath Decl.") ¶¶ 1, 6, June 20, 2023, Docket No. 9.) While there, Talbert had a work assignment at an outside warehouse. (*Id.* ¶ 9.) Prison officials found a contraband cell phone at the warehouse that contained a text message reading, in part, "Chime: Jesse Talbert requests $100." (*Id.*; McIlrath Decl., Ex. D ("Incident Report") at 1, 5, June 20, 2023, Docket No. 9-4.) Chime is an application used to send or request money from third parties. (McIlrath Decl. ¶ 9.) Based on the text message, the reporting officer identified Talbert as the owner of the cell phone and commenced disciplinary proceedings. (*Id.*)

Correctional officers delivered an incident report to Talbert on the same day the cell phone was discovered. (*See* Incident Report at 1.) Talbert was advised of his rights and declined to make a statement. (McIlrath Decl. ¶ 10.) The report accused Talbert of engaging in two prohibited acts under the Bureau of Prison's ("BOP") Inmate Discipline Program—namely, violations of Code 199 and Code 217. (Incident Report at 1.) Code 199 is a stand-in code for a violation of "greatest severity" that "disrupts or interferes

-2-

with the security or orderly running of the institution." (McIlrath Decl., Ex. A ("IDP") at 46, June 20, 2023, Docket No. 9-1.) It is charged only for a violation "most like" another greatest severity infraction that, for one reason or another, is not applicable. (*Id.*) In this case, the 199 violation was used as a stand-in for a 108 violation: possession of a hazardous tool, which includes portable telephones. (Incident Report at 1; IDP at 45.) Code 217 prohibits, as is relevant here, giving or receiving money for a "prohibited purpose." (IDP at 48.) Inmates are not allowed to give or receive money for any purpose. (McIlrath Decl. ¶ 9.) Code 217 is considered a "high severity" prohibited act. (IDP at 47–48.)

Talbert provided no comment during his hearing before the Unit Discipline Committee and was referred for a Discipline Hearing Officer ("DHO") hearing. (McIlrath Decl. ¶ 10.) He was again informed of his rights at that hearing, including the opportunity to have a staff representative and call witnesses in his defense. (*Id.* ¶ 11.) Talbert admitted guilt during the DHO hearing. (McIlrath Decl., Ex. I ("DHO Report") at 1, June 20, 2023, Docket No. 9-9.) The DHO found the 199 and 217 charges were supported by the evidence and imposed sanctions accordingly. (*Id.* at 2, 4.)

Most importantly for this petition, Talbert was disallowed 41 days of vested good conduct time and forfeited 324 days of non-vested good conduct time for the Code 199 infraction. (Pet., Ex. 1 at 3, May 8, 2023, Docket No. 1-1.) He was also disallowed 13 days of vested time for the Code 217 violation. (*Id.*)

For the Code 199 violation, the DHO additionally imposed (1) 30 days of disciplinary segregation (suspended pending 90 days clear conduct), (2) 18 months loss of commissary, phone, and visiting privileges, and (3) a $500 fine. (McIlrath Decl. ¶ 15.) The DHO Report explained that possession of a cell phone "is a serious violation which is disruptive to the safe and orderly running of the institution and will not be tolerated." (DHO Report at 4.) The Code 217 violation also resulted in (1) 30 days disciplinary segregation, (2) 90 days loss of commissary, phone, and visiting privileges, and (3) a $300 fine. (McIlrath Decl. ¶ 15.) The DHO Report explained that "giving and/or receiving money has the potential to escalate into using these funds for illicit purposes which could lead to disruptive behavior." (DHO Report at 4). The DHO asserts all sanctions were within the range supported by the Inmate Discipline Program guidelines for greatest severity and high severity infractions. (McIlrath Decl. ¶ 17.)

Talbert filed an administrative appeal challenging the sanctions one week after receiving the DHO Report. (Pet. at 3.) After receiving no response to the appeal for nearly four months, Talbert filed a petition for a writ of habeas corpus alleging due process violations. (*See generally* Pet.) The petition primarily challenged the forfeiture of 324 days of non-vested good conduct time as an upward departure from the norm, which Talbert believed required special justification. (Pet., Ex. 1 at 2–5.) Talbert asked the Court to restore all 324 days of forfeited non-vested good conduct time or order "any other relief the Court deems appropriate." (Pet. at 5.) The Magistrate Judge issued a Report

and Recommendation ("R&R"), concluding that the disciplinary proceedings were procedurally sound, supported by at least "some evidence," and the sanctions were not "arbitrary or unreasonable" and thus did not violate Talbert's due process rights. (R. & R. at 4–8, Aug. 8, 2023, Docket No. 12.) The Magistrate Judge recommended that Talbert's Petition be denied. (*Id.* at 9.) Talbert filed a timely objection, seemingly only challenging the Magistrate Judge's determination that the forfeiture of good conduct time comported with due process. (R. & R. Obj., Aug. 18, 2023, Docket No. 13.)

## DISCUSSION

### I. STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774 at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3). When reviewing de novo, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues. *See Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable."). However, de novo review of a magistrate judge's R&R "only means a district court 'give[s] fresh consideration to those issues to which specific

objection has been made.'"  *United States v. Riesselman*, 708 F. Supp. 2d 797, 807 (N.D. Iowa 2010) (quoting *United States v. Raddatz*, 447 U.S. 667, 675 (1980)).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Eighth Circuit has been willing to liberally construe otherwise general pro se objections to R&Rs and to require a de novo review of all alleged errors.  *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) ("[E]ven had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record.").  However, "pro se litigants are not excused from failing to comply with substantive or procedural law."  *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

**II.    ANALYSIS**

Talbert's objection focuses on the forfeiture of 324 days of non-vested good conduct time that was levied on top of the 41 days of vested time for the Code 199 violation.  His objection does not challenge the Magistrate Judge's findings on the hearing process or culpability.  Talbert claims that the forfeiture of his good time conduct violates his constitutional right to due process because it exceeds the bounds of ordinary BOP punishment and was not—nor could it be—justified as an aggravated sanction.  The Court concludes that forfeiture of non-vested good conduct time is not an impermissible sanction for a "greatest severity" act under BOP regulations and implementing instructions.  Further, the sanction was sufficiently explained.  The Court will therefore deny Talbert's Petition for Writ of Habeas Corpus and adopt the R&R in full.

Depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). To comport with due process, prison disciplinary hearings that result in loss of good time credits must meet the following rules:

> [T]he inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . .

*Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The Due Process Clause only requires "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Id.* Likewise, "[t]he discretion of the prison officials on matters purely of discipline, within their powers, is not open to review" unless exercised in an unreasonable or arbitrary manner. *Glouser v. Parratt*, 605 F.2d 419, 420–21 (8th Cir. 1979) (quotation omitted).

Here, the forfeiture of 324 days of non-vested good conduct time credits in addition to disallowance of 41 vested days fell within ordinary BOP guidelines, was sufficiently explained, and thus comported with the due process requirement that discipline not be unreasonable or arbitrary. The BOP's implementing instructions and regulations dictate that a disciplinary officer may impose any and all available sanctions for a "greatest severity" offense like Talbert's Code 199 infraction. (IDP at 10, 46.) These sanctions include forfeiture of "non-vested good conduct time (up to 100%)" and

-7-

disallowance of "between 50% and 75% (27-41 days)" of vested good conduct time.  (*Id.* at 46); *accord* 28 C.F.R. § 541.3, tbl. 1; *Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) (concluding that forfeiture of 458 days of non-vested good conduct time falls within the ambit of ordinary punishments for "greatest severity" infractions under 28 C.F.R. § 541.3).  Thus, a DHO may, consistent with BOP guidelines, withdraw up to 41 vested and 100% of non-vested good conduct time credits for a greatest severity offense.  *See also Tejado-Hurtado v. Fikes*, No. 21-2766, 2022 WL 2910006, at *1 (D. Minn. May 26, 2022) (recommending the denial of a habeas petition where the petitioner lost 41 days vested and 180 days non-vested good credit time for possession of a cell phone), *denying petition as moot* 2022 WL 2906199 (D. Minn. July 22, 2022).[1]

Talbert argues the sanction was unreasonable because it departed from BOP guidelines.  (R. & R. Obj. at 1.)  He alleges the standard sanction under the guidelines would only disallow 41 days of vested good conduct time, so the BOP's additional forfeiture of 324 non-vested good time credits was an upward deviation.  (*Id.*) Per Talbert, sanctions exceeding the guidelines are only permitted for aggravated offenses or repeat

---

[1] Other cases in this District have upheld similar reductions in good time credits for use of cellular technology based on these regulations. *See, e.g.*, *Arias v. Barnes*, No. 19-1326, 2020 WL 3642313, at *2 (D. Minn. July 6, 2020) (inmate disallowed 40 days vested and forfeited 100 days non-vested good time credit for possession of a cell phone); *Brown v. Rios*, No. 08-4732, 2009 WL 1744563, at *2, *4 (D. Minn. June 19, 2009) (finding that forfeiture of 41 days vested and 140 days non-vested good time credit is a reasonable sanction for possession of a prohibited SIM card).

violations within a short time, and the decision to depart from the guidelines must be justified in the DHO report. (*Id.*)

Talbert seems to rely on the section of the BOP implementing instructions entitled "[l]oss of good conduct sentence credit as a mandatory sanction," which mentions disallowance of 41 vested days but does not mention non-vested good conduct time. (IDP at 12.) However, though the non-vested good time conduct is not mentioned in this specific portion of the BOP's implementing instructions, other portions of the implementing instructions and 28 C.F.R. § 541.3 support the additional sanction. (*See id.* at 46). Thus, the implementing instructions support the forfeiture of both non-vested good time credits and 41 days of vested credits as an ordinary sanction, not an aggravated punishment that requires special justification.

Because the punishment imposed was not an upwards deviation from the regulations, BOP guidelines did not require the DHO to provide a justification for an aggravated sanction. And under the wide deference given to prison officials to oversee discipline, *see Glouser*, 605 F.2d at 420–21, the explanation provided in the DHO report for the disciplinary action satisfies due process. (DHO Report at 4); *accord Brown v. Rios*, No. 08-5732, 2009 WL 1744563, at *4 (D. Minn. June 19, 2009). The Court therefore finds that Talbert's due process rights were not violated, and it will deny his Petition accordingly.

### III. CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c) dictates that an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding unless a judge issues a Certificate of Appealability ("COA"). A COA should only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2553(c)(3). The Supreme Court has further clarified that a COA is only appropriate if petitioner has shown "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

The Court finds that Talbert has not made a substantial showing of the denial of a constitutional right, and that reasonable jurists could not debate whether her petition for habeas corpus should have been resolved in a different manner. The Court will therefore not grant him a Certificate of Appealability.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objection to the Report and Recommendation [Docket No. 13] is **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 12] is **ADOPTED**;

3. Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED;**

4. Petitioner's Motion to Expedite [Docket No. 6] is **DENIED as moot;**

5. Petitioner's action is **DISMISSED with prejudice**; and

6. The Court does **NOT** issue a Certificate of Appealability under 28 U.S.C. § 2253(c).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 13, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge